IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DAVID M. DOYLE,                                )
                                               )
                     Plaintiff,                )
vs.                                            )
                                               )       Case No.  09-CV-531-TCK-FHM
THE NORDAM GROUP, INC., a foreign              )
for profit corporation, and NORDAM            )
TRANSPARENCY DIVISION OF TEXAS,               )
INC., a domestic for profit corporation.      )
                                               )
                     Defendants.               )

<u>OPINION AND ORDER</u>

Before the Court is the Motion for Summary Judgment (Doc. 21) filed by the NORDAM

Group, Inc. ("NORDAM") and NORDAM Transparency Division of Texas, Inc. ("Transparency

Division") (collectively "Defendants").

I.      **Background**

NORDAM manufactures and repairs parts for the aerospace business in Tulsa, Oklahoma.

One of NORDAM's divisions, the Transparency Division, manufactures transparent parts for

commercial and military aircraft, including windows, flight simulator screens, and helicopter

bubbles.  At all relevant times, the general manager of the Transparency Division was Hastings

Siegfried ("Siegfried"), one of NORDAM's owners.  Plaintiff David M. Doyle ("Plaintiff"), now

sixty-two years of age,  was employed by NORDAM in the Transparency Division from June 2006

until January 2009.  Plaintiff's official title during his employment with NORDAM was "assistant

controller."   As assistant controller, Plaintiff reported directly to the Transparency Division's

controller, Bill Sellers ("Sellers"), who reported to John Day ("Day"), NORDAM's controller.

On January 18, 2007, Sellers gave Plaintiff his review for 2006 ("2006 review").  The 2006

review rated Plaintiff in various "key responsibility areas" of his job, utilizing a rating system of "E"

(exceeds expectations), "M" (meets expectations), and "O" (does not meet expectations and has opportunity for development). Plaintiff did not receive an "E" rating in any area and received an "M" rating in the following areas: (1) assumes responsibility for own actions; (2) can be relied upon to accomplish tasks on time; (3) works overtime as needed; and (4) analyzes inventory. Plaintiff received an "O" rating in the following areas: (1) provides high quality of work; (2) organizes work; (3) begins tasks on own; (4) applies appropriate skill to perform job tasks; (5) completes paperwork accurately; (6) attendance within normal guidelines; and (7) prepares reports. Sellers made the following comments about Plaintiff in the 2006 review:

> [Plaintiff] has several areas that need improvement. Although he has a good amount of experience I don't see it being used consistently. Often I feel as if he is just putting in his time. We sat down in November 2006 and went over some of the issues. Some improvement occurred but not a great amount. I do not believe that the primary duty of the Asst Controller, being a backup to all positions, has been accomplished. We have s[et] this out as a definition of his job. Does not fully occupy his time and when he is not busy doesn't come to me for projects. Has yet to enroll any excel classes, although this may be a timing issue. He has shown propensity for becoming involved in different committees and has done an excellent job here. Overall needs to update his skillsets, manage by example and look to expanding his role within the NTD accounting department.

(2006 review, Ex. 3 to Defs.' Mot. for Summ. J at 1.) In another section of the 2006 review, entitled "Lead, Supervisor, and Manager Leadership Competencies," Plaintiff received an "O" rating for leading people, managing work/getting results, and interpersonal leadership. The supporting comments for these ratings indicate that Plaintiff prepared reports containing inaccuracies, had "instances of delegating tasks as opposed to completing them himself," sometimes came "across as too strong," and had not "won over" the department. (*Id.* 4-5.) In the same section of the 2006 review, Plaintiff received an "M" for managerial courage/decision making.

On March 6, 2007, Sellers gave Plaintiff a "Stakeholder Corrective Action Notice" and a "Performance Improvement Plan" ("PIP").  The PIP listed specific improvement goals and also outlined various issues with Plaintiff's job performance regarding timeliness, department knowledge, and completion of assignments.  The PIP stated that it was in effect for forty-five days and that if Plaintiff's performance improved within this time, no further action would be taken.  The PIP warned that "[f]ailure to improve performance and continue on with the improved performance to meet expectations [would] result in termination of employment."  (PIP, Ex. 5 to Defs.' Mot. for Summ. J. at 2.)

In April 2007, Sellers resigned as controller of the Transparency Division, and NORDAM began the process of finding a controller to replace Sellers.  The job description for the controller position states that a "Bachelor Degree (BA) in Accounting, Finance, or equivalent and a Certified Public Accountant (CPA) certification is required."  (Job Description, Ex. 6 to Defs.' Mot. for Summ. J. at 2.)  The job description also stated that "[e]xperience may be substituted for the formal education and training requirements . . . at the discretion of management." (*Id.*)  During all relevant times, Plaintiff was not CPA certified, as he had let his certification lapse.

While NORDAM searched for a new controller, Day asked Plaintiff to step in and cover the controller's responsibilities.  During this time period, Plaintiff's official title and compensation level did not change.  Plaintiff submitted an application for the open controller position in mid-April 2007. Day told Plaintiff that he was not eligible for the position because of his previous performance rating.  According to Plaintiff, Day told him that he would be reconsidered for the controller position in January 2008 (the date of his next review) if he had an acceptable performance rating and the position was still open.

3

After submitting his application in April 2007, Plaintiff did not formally apply for the controller position again.  However, on his 2007 review, dated January 9, 2008, Plaintiff wrote: "Based on review would like to be reconsidered for controller's position."  (2007 review, Ex. 8 to Defs.' Mot. for Summ. J.)  Further, on July 8, 2008, Plaintiff sent an e-mail to Siegfried, stating that he would "really like to pursue the . . . [c]ontroller position."  Plaintiff then listed his qualifications and told Siegfried that he would appreciate Siegfried's "support and input."  (7/8/08 e-mail, Ex. 10 to Defs.' Mot. for Summ. J.)  Finally, on August 1, 2008, Plaintiff sent an e-mail to Day, stating: "During my mid year review we discussed the . . . [c]ontroller's position and you were going to talk to [Siegfried] regarding the opening.  I was wondering if you have had the opportunity to discuss the opening with him."  (8/1/08 e-mail, Ex. 9 to Defs.' Mot. for Summ. J.)  According to Plaintiff, he did not receive responses to these inquiries.

On November 5, 2008, Plaintiff applied for the position of Finance Manager/Controller at Honeywell.  The following month, NORDAM hired Philip Roberts ("Roberts") as the Transparency Division's controller.  Roberts was CPA certified and thirty-nine years old at the time.  Shortly thereafter, Honeywell offered Plaintiff the position of Finance Manager/Controller at an annual salary of $85,000, which was approximately $14,000 more than Plaintiff was receiving at NORDAM.  Plaintiff accepted Honeywell's offer and, in a January 8, 2009 letter to Roberts, stated that he was "resigning [his] position as Assistant Controller for the NORDAM Transparency Division effective January 8, 2009."  (1/8/09 Resignation Letter, Ex. 13 to Defs.' Mot. for Summ. J.)

On March 19, 2009, Plaintiff filed a charge of discrimination with the Oklahoma Human Rights Commission, alleging that he was not promoted to the controller position because of his age. On May 15, 2009, the Equal Employment Opportunity Commission ("EEOC") dismissed Plaintiff's

charge of discrimination.  Plaintiff thereafter filed suit against Defendants, alleging the following claims: (1) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); (2) violation of the Oklahoma public-policy tort prohibiting employment discrimination, as identified in *Burk v. K-Mart Corporation*, 770 P.2d 24, 29 (Okla. 1989) ("*Burk* tort"); and (3) intentional infliction of emotional distress.  Defendants move for summary judgment on all claims.

## II.      Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id*.  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.     ADEA Claim

Plaintiff asserts Defendants discriminated against him in violation of the ADEA by failing to promote him to the position of controller and by constructively discharging him from employment.

A.       **Legal Standard Governing ADEA**

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court recently concluded that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ---- , 129 S.Ct. 2343, 2350 (2009). The Court held that in order to "establish a disparate-treatment claim under the plain language of the ADEA[,] a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* Therefore, in all ADEA disparate treatment claims, the plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of the challenged employer decision. *Id.* at 2351 & n.4.

After *Gross*, courts struggled with whether the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), continued to apply to ADEA cases. The Tenth Circuit recently clarified this issue, however, and held that a plaintiff may meet his burden under the ADEA by either direct evidence or by indirect evidence through the *McDonnell Douglas* framework. *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010). Under this familiar framework, Plaintiff must first make a prima facie case of discrimination under the ADEA, demonstrating that: (1) he is a member of a class protected by the ADEA; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than others not in the protected class. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998). "Once the plaintiff has made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Pinkerton v.*

6

*Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009).  If the employer does so, the plaintiff

must show that the alleged reasons for the adverse action are pretextual.  *Id.*  Plaintiff can show

pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact

finder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323

(10th Cir. 1997) (quotations omitted).

It appears *Gross* has somewhat altered the analysis of the *McDonnell Douglas* framework

in the ADEA context, however, with its holding that a plaintiff must prove age was the "but-for"

cause of the employer's adverse decision.  The Tenth Circuit has recently explained that, even at the

summary judgment stage, "it is not the employer's burden to negate any possible contributory role

played by age in the challenged adverse action but, conversely, the employee's burden to show that

age was the 'but for' cause of the action." *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185,

1193 (10th Cir. 2010) (citing *Gross*, 129 S.Ct. at 2351).  Judge Philip A. Brimmer of the District of

Colorado provided a helpful explanation of *Medlock* and *Gross*, which this Court finds instructive:

> [I]n the wake of *Gross*, the Tenth Circuit appears to be endorsing closer district court
> consideration of whether, in addition to meeting the *McDonnell Douglas* three-part
> test, the plaintiff can show that age was a but-for cause of the challenged decision.
> *See Medlock*, 608 F.3d at 1193.  It is not clear how exactly this consideration is to
> make its way into the analysis.  *Medlock* suggests that it could come in at *McDonnell*
> *Douglas'* pretext stage.  *Medlock*, 608 F.3d at 1194.  In the alternative, *Medlock*
> seems to be stating that the lack of but for causation could undermine the reasonable
> inference of age discrimination that might otherwise arise due to *McDonnell*
> *Douglas*.  *See Medlock*, 608 F.3d at 1194.  Under this approach, the but-for
> consideration could be an overarching or subsequent consideration.

*Bradley v. Denver Health and Hosp. Auth.*, --- F. Supp. 2d ---- , 2010 WL 3341508, at *22 (D. Colo.

Aug. 24, 2010).  The "but-for" causation standard thus appears to be a relevant consideration at the

summary judgment stage.  *See id*.; *Wilbanks v. Nordam Grp., Inc.*, No. 09-CV-0572-CVE-TLW,

2010 WL 4272581, *10 (N.D. Okla. Oct. 25, 2010) (granting summary judgment in favor of defendant on plaintiff's ADEA claim because, *inter alia*, plaintiff "ha[d] not made a showing that she would not have been terminated but for her age, and ha[d] therefore not met her burden to show pretext") (applying *Gross*'s "but-for" standard).

### B.       Failure to Promote

Defendants argue that Plaintiff is unable to succeed on his failure to promote claim under the ADEA because his charge of discrimination was untimely, Plaintiff was not qualified for the position of controller, and there is no evidence that Plaintiff was denied a promotion because of his age.

#### 1.       Timeliness of Charge

The exhaustion of administrative remedies is a jurisdictional prerequisite to bringing a suit under the ADEA. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). To exhaust administrative remedies, a plaintiff must generally present his claim to the EEOC within 300 days of the challenged discriminatory action. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). "[E]ach discrete incident of [discriminatory or retaliatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.* (quotation omitted). In this case, Defendants argue that Plaintiff's charge of discrimination, filed on March 19, 2009, was untimely, as his failure to promote claim "arose in April 2007 when he applied for the controller position, was denied a promotion to that position and the position thereafter remained open." (Defs.' Mot. for Summ. J. 6.)

The Court disagrees with Defendants' position. In determining when a failure to promote claim accrues, it is the date the employer fills the position to the exclusion of plaintiff that determines the timeliness of the claim. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 n.2 (4th

Cir. 2004) (finding plaintiff's failure to promote claim accrued when employer selected who to promote) (citing rule that "it is the date of the actual promotion decision . . . that determines the timeliness of [the] claim[]"); *Beckham v. Nat'l R.R. Passenger Corp.*, 636 F. Supp. 2d 111, 113 n.3 (D.D.C. 2009) ("A cause of action for failure to promote under Title VII accrues when the employer fills the position.") (citing *Williams*, 370 F.3d 423); *Samuel v. Merrill Lynch Pierce Fenner & Smith*, 771 F. Supp. 47, 49 (S.D.N.Y. 1991) ("The accrual date of a claim based on the discriminatory denial of a promotion is the particular date on which the position is filled to the exclusion of the plaintiff."). In this case, the controller position was filled when Defendants hired Roberts in December 2008. Although Day informed Plaintiff that he was not eligible for the promotion in April 2007, Day also told Plaintiff that he would be reconsidered for the controller position in January 2008 if he had an acceptable performance rating and the position was still open. Indeed, the door to this position remained open for Plaintiff, and the record reflects that he was eligible for promotion in December 2008, when Roberts was hired. The Court therefore finds that Plaintiff's claim accrued in December 2008, and not April 2007. Because Plaintiff filed his charge of discrimination less than 300 days after December 2008, Plaintiff's charge of discrimination was timely.[1]

2. *McDonnell Douglas* Analysis

Defendants first argue that Plaintiff's lack of a CPA certification renders him unable to make a prima facie case of discrimination because he was not qualified for the controller position. In support of this argument, Defendants cite to the job description for the controller position, which states that a "Bachelor Degree (BA) in Accounting, Finance, or equivalent and a Certified Public

---

[1]  Because the Court finds that Plaintiff's failure to promote claim was subject to a timely charge of discrimination, it need not address Plaintiff's alternative contention that the Court should equitably toll the applicable time limits.

Accountant (CPA) certification is required." (Job Description, Ex. 6 to Defs.' Mot. for Summ. J. at 2.) The Court does not find summary judgment appropriate on this basis, however, because the job description also states that "[e]xperience may be substituted for the formal education and training requirements . . . at the discretion of management." (*Id*.) The plain language of the job description therefore demonstrates that the lack of a CPA certification could be overlooked in specific circumstances. Thus, standing alone, Plaintiff's lack of CPA certification is not enough to demonstrate that he was unqualified. This is Defendants' only objection to Plaintiff's ability to make his prima facie case of discrimination.

The burden therefore shifts to Defendants to articulate a legitimate, nondiscriminatory reason for its failure to promote Plaintiff to controller. Although Defendants' briefing could have been more clear on this issue,[2] the Court finds that Defendants have met this "exceedingly light burden." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007). Defendants contend that Plaintiff was not chosen as controller because Plaintiff was not qualified for the position in question and had not performed well in his current job. Specifically, Defendants cite the following: (1) Plaintiff's lack of a CPA certification; (2) Day's testimony, wherein he stated that Plaintiff "did not have the knowledge to handle the job [of controller]," (Day Dep., Ex. 2 to Defs.' Mot. for Summ. J. at 100:19-21); and (3) Plaintiff's negative performance rating.

To survive summary judgment, Plaintiff must show that the reasons proffered by Defendants are pretextual. Plaintiff argues Defendants' asserted reasons for not promoting him are pretextual

---

[2] Defendants did not structure their arguments in terms of the burden-shifting framework of *McDonnell Douglas*. Therefore, Defendants' arguments regarding why Plaintiff was not promoted to controller are not framed in terms of "legitimate, nondiscriminatory" reasons. Nonetheless, Defendants' briefing articulates the above-listed reasons for not promoting Plaintiff to controller, which the Court has extrapolated for its *McDonnell Douglas* analysis.

because (1) he assumed the controller duties for twenty-one months, demonstrating he was eligible and qualified for the position; (2) other candidates who did not have CPA certification were interviewed and recommended for the position; (3) Defendants hired controllers for other departments who were younger than Plaintiff; and (4) Day made age-related comments showing age bias. (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. 15-18.)

With regard to Plaintiff's assumption of the controller's duties after Sellers' departure, the record reflects that neither Plaintiff's title nor his compensation changed during this time period. Rather, Plaintiff remained in the position of assistant controller, and was simply covering the controller's responsibilities while Defendants searched for a new controller. As evidenced by Day's testimony, it was common for assistant controllers to have to step in and cover the controller's responsibilities at times. (*See* Day Dep., Ex. 1 to Pl.'s Resp. to Defs.' Mot. for Summ. J. at 49:5-7.) Therefore, Plaintiff's assumption of these duties does not demonstrate that Defendants' asserted reason for not promoting Plaintiff – namely, that he was unqualified – is pretextual and that Defendants were instead motivated by Plaintiff's age. It merely reflects the fact that as assistant controller, it was incumbent on Plaintiff to fill the controller's shoes until Defendants selected a new controller. Plaintiff's ability to assume the controller's responsibilities while a permanent replacement was located does not demonstrate that Plaintiff was qualified to be the controller on a permanent basis.

Nor does Plaintiff's argument regarding other candidates who did not have CPA certifications demonstrate pretext. Plaintiff cites to interview notes for applicants Terry Butler ("Butler"), Chris Van Denhende ("Van Denhende"), and Jim Hicks ("Hicks") and asserts that these candidates had "inactive CPA licenses" at the time they applied for the controller position. According to Plaintiff, this demonstrates an inconsistency in Defendants' assertion that they did not

promote Plaintiff in part because he did not have a CPA certification.  The Court disagrees, as the

record reflects that none of these candidates were selected for the position of controller.  Therefore,

this evidence merely demonstrates that the universe of applicants for the controller position included

some individuals without CPA certification (including Plaintiff).  Further, although Day stated in

his interview notes that Hicks was "the best candidate that comes closest to fitting into the

organization," Day's notes also indicated that Hicks "[did] not have the costing experience that

[Day] would like nor a CPA but said he would work at obtaining it."  (Hicks Interview Notes, Ex.

8 to Pl.'s Resp. to Defs.' Mot. for Summ. J. at NORDAM 0594.)  If anything, these notes

demonstrate the importance to Defendants of a CPA certification.

Further, Plaintiff is unable to show pretext by asserting that Defendants hired controllers for

other departments who were younger than Plaintiff.  In support of this argument, Plaintiff cites his

affidavit, wherein he states:

> [D]ay hired Martin as Controller in another NORDAM division in March 2008.  I am
> 15-20 years older than Martin.
>
> [D]ay hired Brad as Controller in NORDAM's repair division. I am at least 20 years
> older than Brad.
>
> [D]ay hired [R]oberts as Controller to replace me as the acting Controller. I am at
> least 20 years older than Roberts.

(See Pl.'s Aff., Ex. 12 to Pl.'s Resp. to Defs.' Mot. for Summ. J. at ¶¶ 6-8.)  Plaintiff fails to provide

any other evidence regarding these individuals, their qualifications, or experience so as to provide

context to this information.  The fact that Defendants hired individuals who were younger than

Plaintiff does not demonstrate that Defendants' explanation for why Plaintiff was not selected for

the position of controller is unworthy of belief.  While "statistical data showing an employer's

pattern of conduct toward a protected class can create an inference that an employer discriminated

against individual members of the class, . . . [s]tatistics taken in isolation are generally not probative of . . . discrimination." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1114-15 (10th Cir. 2007) (internal citations omitted). "At the very least, in order to create an inference of pretext, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between *comparable* individuals." *Id.* Plaintiff's argument completely fails to eliminate nondiscriminatory explanations for why Brad, Martin, and Roberts were hired by Defendants, and, as such, does not demonstrate pretext.

The allegedly age-related comments made by Day also do not show that the reasons given for the failure to promote Plaintiff are pretextual. Plaintiff first cites to Day's interview notes for Bob Hess ("Hess"), a candidate for the controller position, where Day wrote: "Getting close to retirement, but feels he can work another 10-15 years." (Hess Interview Notes, Ex. 14 to Pl.'s Resp. to Defs.' Mot. for Summ. J. at NORDAM 0580.) Second, Plaintiff cites the following statements made in Day's deposition:

> Q:      Did you view [Plaintiff] as energetic?
>
> A:      For where he was in the assistant controller position, no.
>
> Q:      How would one exhibit themselves as being energetic?
>
> A:      Well, they would be on top of the situation at that business, they'd know what's going on in the business, they would demonstrate the eagerness to go solve problems and work problems and really improve the operation of the Finance Group. I never saw that from him.

(Day Dep., Ex. 1 to Pl.'s Resp. to Defs.' Mot. for Summ. J. at 121:9-19.) Plaintiff also cites to a portion of Day's deposition wherein he was asked what impressed him about Roberts' qualifications. Day responded by stating: "Of course, he had all of his, the education, CPA, experience level; he was energetic, very outgoing, positive personality." (*Id.* 30:10-14.)

As stated by the Tenth Circuit, "stray remarks" and "isolated or ambiguous comments are too abstract . . . to support a finding of age discrimination." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (quotation and alteration omitted).   The Court finds that the comments cited by Plaintiff fall into this category.   Specifically, with regard to the comment about Hess "[g]etting close to retirement," it is unclear whether this notation was written because of a comment voluntarily made by Hess, or whether Day made a specific inquiry regarding Hess' retirement plans.   Even if the note was the result of an inquiry made by Day, a simple inquiry into retirement plans, standing alone, does not establish pretext.   *See Kirkpatrick v. Pfizer, Inc.*, No. 09-6116, 2010 WL 3199802, at *6 (10th Cir. August 12, 2010) (concluding that supervisor's inquiry as to plaintiff's retirement plans was insufficient to support a finding of pretext) (citing *Zeigler v. Beverly Enters.-Minn., Inc.*, 133 F.3d 671, 676 n.3 (8th Cir. 1998) (holding an employer's questions about an employee's age and retirement plans insufficient to demonstrate age discrimination); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (same); *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992) ("[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct.")).

Nor does Day's belief that Plaintiff was not "energetic" support a finding of pretext.   The statements by Day indicate that Plaintiff's lack of "energy" had nothing to do with his age.   Rather, when asked to elaborate on the meaning of "energetic," Day indicated he was using this term in the context of an individual's knowledge and eagerness with regard to the job in question.   There is simply no indication that Day's remark about Plaintiff not being "energetic" had anything to do with Plaintiff's age.   Nor is there any indication that Day's belief that Roberts was energetic had anything to do with Roberts' age.   Thus, even when viewed "through the prism of [the Court's] summary

14

judgment lens," *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008), Day's comments do not cast sufficient doubt on Defendants' explanation of why Plaintiff was not promoted to controller.

Finally, whether the "but-for" causation requirement of *Gross* is applied as an "overarching" or "subsequent" consideration, *see Bradley*, 2010 WL 3341508, at *22, it also prevents Plaintiff's ADEA claim from going to trial. None of Plaintiff's evidence "affirmatively supports an inference that age played any role in [the] decision" by Defendants not to promote him to controller. *Medlock*, 608 F.3d at 1194. Taken together, the evidence presented by Plaintiff does not create a genuine question of fact as to whether Plaintiff's age was a but-for cause of the failure of Defendants to promote him. Specifically, no reasonable jury could conclude that age was a but-for cause of the failure to promote Plaintiff in light of Plaintiff's poor performance review and his undisputed lack of CPA certification. Thus, because this Court finds that no reasonable jury could conclude that Defendants acted with discriminatory animus based on Plaintiff's age, Defendants are entitled to summary judgment on Plaintiff's failure to promote claim under the ADEA.

## C.    Constructive Discharge

Defendants argue that Plaintiff is unable to succeed on his constructive discharge claim under the ADEA because Plaintiff has not exhausted his administrative remedies as to this claim. "In determining whether a particular claim has been exhausted, . . . the court's inquiry is limited to the scope of the allegations raised in the administrative charge because '[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Almond v. Unified Sch. Dist. No. 501*, --- F. Supp. 2d ----, 2010 WL 4384206, at *5 (D. Kan. Oct. 28, 2010) (citing *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). "In other words, the charge

must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Almond*, 2010 WL 3284206, at *5 (internal quotations and citations omitted). "A party may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances." *Schroder v. Runyon*, 1 F. Supp. 2d 1272, 1274 (D. Kan. 1998).

Plaintiff's charge states:

I.      Beginning in April 2007, I was asked to act as interim [c]ontroller . . . by [D]ay, VP and [c]ontroller, Nordam Corporate. I assumed these duties while still performing my job duties as assistant controller[.] I notified management of my interest in being considered for the controller position, which would have been a promotion for me. December 9, 2008, I became aware that Phillip Roberts, thirty-nine years old, was selected for the position of [c]ontroller.

II.     No reason has been given for my non-selection. No reason has been given for the selection of a younger, less experienced individual for the position of controller[.]

III.    I believe that I have been discriminated against due to my age, in violation of the [ADEA].

(Charge of Discrimination, Ex. 14 to Defs.' Mot. for Summ. J.) A fair reading of Plaintiff's charge does not reveal any claim for discriminatory discharge, as the charge only references the fact that Plaintiff was not promoted to the position of controller. Further, there is not a reasonable expectation that the EEOC would investigate a claim for discharge based on the narrow allegations contained in the charge. Indeed, the charge does not even mention that Plaintiff resigned from NORDAM – a necessary fact for any claim of constructive discharge. The Court therefore finds that Plaintiff has failed to exhaust his administrative remedies as to any claim under the ADEA based on constructive discharge.

Moreover, even if Plaintiff had exhausted his administrative remedies as to this claim, Plaintiff has put forth no evidence supporting constructive discharge. An employee is constructively discharged "when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005). "A finding of constructive discharge depends on whether a reasonable person would view the working conditions as intolerable, not upon the subjective view of the employee-claimant." *Id.* The Tenth Circuit has noted that "[t]he bar is quite high" when it comes to showing that the employee had no option other than resignation. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002). "The question is not whether working conditions . . . were difficult or unpleasant," but rather whether the plaintiff's decision to resign can properly be characterized as involuntary." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (quotation omitted).

The Court finds Plaintiff has not demonstrate a genuine issue of material fact as to the existence of working conditions that were so intolerable so as to force him to resign. While Plaintiff obviously took issue with the fact that Defendants did not promote him to controller, the Court is unwilling to hold that a failure to promote creates "intolerable" working conditions. As discussed above, there is insufficient evidence to support the contention that the failure to promote Plaintiff was because of his age or any other consideration which might be intolerable. Summary judgment is therefore appropriate as to Plaintiff's ADEA claim based on constructive discharge.

## IV.    *Burk* **Tort Claim**

Plaintiff additionally claims he was discriminated against in violation of the public policy of Oklahoma based upon the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. Ann. tit. 25, §§ 1101 - 1901 (West. 2008). In relevant part, the Act provides:

17

> It is a discriminatory practice for an employer:
> [ ] To fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, sex, national origin, age, or handicap unless such action is related to a bona fide occupational qualification reasonably necessary to the normal operation of the employer's business or enterprise; . . .

*Id.* § 1302.   The OADA can serve as the statutory basis for a common law tort claim under *Burk v. K-Mart Corp.*, 770 P. 2d 24 (Okla. 1989).   The *Burk* court explained that an actionable tort claim arises under Oklahoma law "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or performing an act consistent with a clear and compelling public policy."   *Id.* at 29.   The Oklahoma Supreme Court has specifically held that a *Burk* tort remedy is available in employment discrimination cases to those who allege age discrimination. *Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144, 151-53 (Okla. 2008).

The elements of a *Burk* tort claim include: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal."   *Kruchowski*, 202 P.3d at 151-52 (internal citations omitted).   "The Oklahoma Supreme Court has recently confirmed that a *Burk* tort claim is available for age discrimination, notwithstanding the existence of the federal statutory remedy under the ADEA."   *Medlock*, 608 F.3d at 1189 n.1 (citing *Kruchowski*, 202 P.3d 144, 145-46, 151; *Saint v. Data Exch.*, 145 P.3d 1037, 1038-39 (Okla. 2006)).   Plaintiff concedes that he was not actually discharged from his position with NORDAM, but asserts a *Burk* claim for failure to promote and constructive discharge.

18

### A.        Failure to Promote

NORDAM argues that a failure to promote claim is not actionable under *Burk*, rendering summary judgment appropriate as to this claim.  Plaintiff disputes this contention, citing the OADA's statement that "it is a discriminatory practice for an employer . . . . *otherwise to discriminate* against an individual with respect to compensation or the terms, conditions, privileges, or responsibilities of employment, because of . . . age."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 18 (citing Okla. Stat. tit. 25, § 1302).)  According to Plaintiff, the phrase "'otherwise to discriminate' is inclusive of employment decisions such as failure to promote."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 18.)  Plaintiff also cites the portion of the OADA making it unlawful to "limit . . . an employee in a way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of . . . age," contending that this language "logically extends to failure to promote."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 18 (citing Okla. Stat. tit. 25, § 1302).)

The Court is unwilling to extend the *Burk* tort to a failure to promote situation, as Plaintiff has offered no case law supporting such an extension.  Rather, case law makes clear that *Burk* "applies *only* to cases of wrongful termination of employment."  *Mason v. State ex rel. Bd. of Regents of Univ. of Okla*, 23 P.3d 964, 968 (Okla. Civ. App. 2000); *see Rollins v. Am. Airlines, Inc.*, No. 06-5135, 279 Fed. Appx. 730, 734 (10th Cir. May 28, 2008) ("*[B]urk* did not create an omnibus remedy for adverse employment actions short of discharge that might be related to state public policy concerns.").  Therefore, *Burk* tort claims have been dismissed when premised on other employment-related decisions, including denial of promotion.  *See York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 959 (10th Cir. 1996) (affirming grant of summary judgment on public policy claim when claim was premised on failure to promote).  The Court therefore finds summary judgment

appropriate as to Plaintiff's *Burk* tort claim to the extent such claim is based on Defendants' failure to promote Plaintiff.

### B.    Constructive Discharge

Defendant also moves for summary judgment on Plaintiff's *Burk* tort claim because Plaintiff did not exhaust his administrative remedies with regard to any claim for constructive discharge. *See Atkinson v. Halliburton Co.*, 905 P.2d 772, 777 (Okla. 1995) (holding plaintiff must exhaust administrative remedies before filing *Burk* claim). The Court finds this argument well-founded, as Plaintiff has not filed any charge of discrimination based on constructive discharge. *See supra* Section III.C. Further, even had Plaintiff exhausted his administrative remedies, the Court finds there is insufficient evidence to support the contention that Plaintiff was constructively discharged. *See id.*

### V.    Intentional Infliction of Emotional Distress Claim

In order to succeed on a claim of intentional infliction of emotional distress, a plaintiff must show: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir. 1991). To satisfy the extreme and outrageous element, a plaintiff must prove the defendant's conduct was so extreme and outrageous as to be beyond all possible bounds of decency. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986) ("Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community, falls short of having actionable quality." (quotations omitted)). In evaluating the outrageousness of certain conduct, courts must consider the setting in which the conduct occurred, *id.*, and Oklahoma law explicitly does not extend

liability "to mere insults, indignities, threats, ... [or] occasional acts that are definitely inconsiderate and unkind." *Eddy*, 715 P.2d at 77 (quotation omitted).  Finally, Oklahoma law directs the district court to act as a gatekeeper and make an initial determination about the validity of a claim before sending it to the jury.  *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1377-78 (Okla. 1978) ("The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery . . . .").

Plaintiff provides scant argument in support of this claim.  Specifically, Plaintiff argues that Defendants' conduct was "outrageous" because Plaintiff "performed as acting controller without the significant pay increase that accompanied the position, but was never even given the opportunity to interview for the position and was subsequently denied promotion."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 20.)  Even considered in the light most favorable to Plaintiff, this evidence is insufficient to support a claim for intentional infliction of emotional distress.  Indeed, Oklahoma courts have found inadequate to support a claim of intentional infliction of emotional distress actions that are more compelling that those alleged by Plaintiff.  *See Eddy*, 715 P.2d 74 (multiple instances of ridicule and harassment of employee); *Miner v. Mid-Am. Door Co.*, 68 P.3d 212 (Okla. Ct. App. 2002) (coemployee's verbal abuse regarding employee's sexuality and physical threats);  *Mirzaie v. Smith Cogeneration, Inc.,* 962 P.2d 678 (Okla. Ct. App. 1998) (employer making harassing phone calls to plaintiff in the middle of the night, requiring him to do unnecessary work, and making derogatory sexual comments about the plaintiff's fiancee); *Anderson v. Okla. Temp. Servs.*, *Inc.*, 925 P.2d 574 (Okla. Ct. App. 1996) (former supervisor's conduct in describing how sexual favors could be used to obtain business, discussing former employee's faults with another employee, making lewd remarks about former employee, leaving door open to restroom and coming out with her skirt up to waist, opening her blouse to show bra to co-workers and commenting on her sex life with her

21

husband within hearing distance of employees).  The conduct alleged by Plaintiff simply does not rise to the level of being so extreme and outrageous so as "beyond all possible bounds of decency." *Eddy*, 715 P.2d at 77 (internal citation omitted).

Further, Plaintiff has failed to make a sufficient showing that he suffered emotional distress that was "so severe that no reasonable [person] could be expected to endure it." *Breeden,* 575 P.2d at 1377-78, n. 6.  Plaintiff merely contends that he was "devastated" by the actions of NORDAM, without any additional supporting evidence or argument.  (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. 20.)  Standing alone, Plaintiff's statement that his distress was severe because he was "devastated" is not enough to survive summary judgment.  Accordingly, the Court grants Defendants' motion for summary judgment on this claim.

## VI.    Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. 21) is GRANTED.  A separate Judgment will be entered.


**IT IS SO ORDERED this 13th day of December, 2010.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**